IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL BAKER, et al.** ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| ) | Case No. 4:16-cv-00447-RK |
| v. ) | |
| ) | |
| **ANYTIME LABOR-KANSAS, LLC**, d/b/a ) | |
| LABORMAX STAFFING, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

COME NOW, Plaintiffs and on behalf of themselves and a class of others similarly situated, and hereby submit their Suggestions in Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration, and respectfully state as follows:

### I. Nature of the Case

In this case, Plaintiffs, on behalf of themselves and others similarly situated, allege that together, Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), and the Missouri Human Rights Act, MO. REV. STAT. § 213.010 et seq. ("MHRA") by discriminating against Plaintiffs in the terms and conditions of their employment.

### II. Argument

#### A. This Court May Properly Decide Whether the Arbitration Agreement is Enforceable.

Under the Federal Arbitration Act, 9 U.S.C.A. § 2 ("FAA"), an arbitration agreement is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Supreme Court explained this language in *Perry v. Thomas,*

1

stating that "state law, whether legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." 482 U.S. 483, 492 (1987). Courts will first interpret and secondly follow state law in determining whether a valid agreement to arbitrate exists. *Id.*

Under Missouri's three-part test in determining which state law to apply in contract interpretation, a court will consider: (1) where the parties made the contract, (2) where the parties negotiated the contract, (3) where the performance took place…and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.,* 943 S.W.2d 711, 715 (Mo. Ct. App. 1997).

Because Plaintiffs intend to establish the Arbitration Agreement is not enforceable as a matter of law, the FAA cannot, standing alone, require arbitration. Although the facts indicate Kansas as the state with the most significant relationship to the contract formation, because Defendants' corporate headquarters is in Missouri and jurisdiction and venue are proper there, Missouri contract law may be applied where Kansas law has not addressed an issue in question.

### B. The Agreement is Unenforceable Because it Lacks Consideration.

An enforceable contract "must be supported by consideration" under Kansas contract law. *Varney Business Services, Inc., v. Pottroff,* 59 P.3d 1003, 1014 (Kan. 2002) (internal citations omitted). "Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forebearance, detriment, loss or responsibility, given, suffered, or undertaken by the other." *Id.* (citing 17A Am.Jur.2d, Contracts § 113, p.129).

Defendants adamantly stand on *White v. Four B. Corp.,* 2011 WL 4688843 (D. Kan. Oct. 5, 2011) for the Agreement's alleged validity. However, the court in *White* (a Kansas Federal District Court) merely proposed, in dicta, how Kansas might treat such an issue. Thus, as

2

Defendants have failed to point to any controlling Kansas law construing an arbitration agreement in the employment context, the standard set forth in *White* is unpersuasive. Neither lack of mutuality nor lack of consideration will alone be sufficient to render a contract void, but together they can result in such an occurrence. *Id.* at *2-3 (citing Restatement (Second) of Contracts § 79(c)(1981). As far as mutuality goes, "a mutual promise to arbitrate differences may, in fact, be necessary consideration to support an arbitration agreement." *Owen v. MBPXL Corp.,* 173 F.Supp.2d 905. 916 n.5 (N.D. Iowa, Nov. 20, 2001) (citing *Durkin v. Cigna Property & Cas. Corp.,* 942 F. Supp. 481, 488 (D.Kan. 1996) (finding that under Kansas law, mutuality of rights and remedies is at least a factor, if not a requirement, in determining consideration).

Relevant portions of the Agreement in question states as follows: "I agree that any disputes arising out of employment, including any claims of discrimination, harassment, or wrongful termination, that I believe I have against LaborMax Staffing and all other employment related issues…will be resolved by arbitration as my sole remedy." While the Court in *Durkin* compelled arbitration, it found mutuality in the agreement only because "the employer was also bound to submit employment disputes to arbitration or mediation." 942 F.Supp. at 488. Similarly, although the court did not find for the Plaintiff in *White*, it did so because the Plaintiff attempted to argue "mutuality" and "lack of consideration" separately. 2011 WL 4688843, *at 2-3. In this case, it is clear that under the arbitration agreement in question, the Defendants had no obligation to be bound by the arbitration agreement as the plaintiffs where, and thus the agreement lack mutuality. Where in *Durkin* the agreement bound the employer to arbitration, it did not do so here.

As previously mentioned, no Kansas state court has explicitly mandated how Kansas contract law would treat such an arbitration agreement. Accordingly, it may be appropriate to

3

look at Missouri case law. First, Missouri has widely held an initial offer of employment or continuing employment fails as consideration in the employer-employee context. *See Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 26 (Mo. App. W.D. 2008); *Whitworth v. McBride & Son Homes Inc.,* 344 S.W.3d 730, 741 (Mo. App. W.D. 2011); *Frye v. Cadillac,* 321 S.W.3d 429, 437 (Mo. App. W.D. 2010). Defendants argue that in consideration for this arbitration agreement, they "hired the Plaintiff." Yet, they cite to no specific Kansas law explaining this, and they ignore Missouri law explicitly arguing the opposite.

Generally, "if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration." *Frye,* 321 S.W.3d at 438. Moreover, "where the practical effect of an arbitration agreement binds only one of the parties to arbitration, it lacks mutuality or promise and is devoid of consideration." *Jimenez v. Cintas Corporation,* 475 S.W.3d 679, 688 (Mo. App. E.D. 2015) (holding that an employment contract exempting an employer from arbitrating claims a Plaintiff is required to arbitrate, and allowing the employer to seek redress in the courts, is sufficient to find the agreement lacked mutuality and thus consideration).

Missouri courts have more clearly explained, the requirement of mutuality in the employment context as the few relevant Kansas' cases have hinted. Thus, whether applying the "mutuality plus consideration" standard from *Durkin* and *White* in Kansas, or the aforementioned Missouri cases, there is no doubt that the clear, one-sided arbitration agreement in Defendants' arbitration provision lacks consideration as it places no contractual duty for Defendants to arbitrate. To require an at-will, temporary employee to arbitrate "any disputes arising out of [their] employment" is an extreme measure. Furthermore, while the agreement requires

4

Plaintiff's to jump through any and every hoop, the Defendants can litigate any issue arising out of the same "employment" without blinking an eye at an arbitrator. This lack of mutuality resulted in an unfair, one-sided arbitration agreement, and it certainly, according to Kansas' definition of consideration, did not result in a detriment to Defendants. Quite opposite, Defendants solely benefit from the agreement and have no reciprocal loss from the same agreement. The Arbitration Agreement's bold lack of mutuality, particularly in the context of temporary, at-will employees in relationship to a nationwide company, cannot result in sufficient bargained-for consideration, and as such, the agreement is irrevocable on legal grounds.

### C. The Agreement is Unenforceable Because It Is Unconscionable and Defendants Have Unclean Hands.

"A doctrine of unconscionability is used to deny enforcement of unfair or oppressive contracts because of procedural abuses arising out of the contract formation or because of substantive abuses relating to terms of the contract. *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492 (Kan. Ct. App. 1989). Unconscionability is decided on a case-by-case basis under the particular circumstances involved. *Id.* at 493. Although the doctrine of unconscionability is difficult to define precisely, courts have identified the following factors among others:

> (1) the use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position offered on a take it or leave it basis to the party in a weaker economic position…(4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect…(7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the

5

bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated, and the illiterate; and (10) inequality of bargaining or economic power.

*Id.* at 493-94 (citing *Willie v. Southwestern Bell Tel. Co.,* 219 Kan. 757, 758-59 (1976)). Courts have most often found an absence of a meaningful bargain in circumstances in which a party's knowing assent to the fine print terms is fictional through his inexperience or ignorance. *Willie*, 219 Kan. at 759 (quotations omitted). An arbitration agreement will be unconscionable when the agreement's provisions are unduly one sided and/or the apportionment of fees resulting from said arbitration will fall heavily on the one being forced to arbitrate. *See Wilson v. Mike Steven Motors, Inc.,* 2005 WL 1277948, at *9 (Kan. App. Ct. 2005).

First and foremost, the combination of Defendants' strength and the inequality in bargaining position coupled with the arbitration agreement's unduly one-sidedness far surpasses the threshold of unconscionability laid out in *Adams*. Defendants employ temporary workers - workers so temporary that they're "deemed to have quit" until they report to the office at a later date and receive a new temporary assignment.[1] Defendants are also a multi-million dollar, nationwide company, generating their revenue solely on the basis of employing temporary workers just like Plaintiffs in this case. Indeed, the nature of temporary employment is already per se fragile, and the unequal bargaining power between Defendants and their temporary employees is obvious. Many applicants are not in a position to turn down an offer of employment because they need to pay bills to make ends meet.[2] Defendants even capitalized on the situation by attaching the Agreement to the blank job applications provided to Plaintiffs, further telling them they had to sign the application in order to be hired.[3]

---

[1] See Plaintiffs' Agreements, Exhibits 15-18 & 22.
[2] See Exhibit 19 ¶ 9; Exhibit 21 ¶ 8 & 9.
[3] See Exhibit 19 ¶ 5; Exhibit 20 ¶ 4-5; Exhibit 21 ¶ 4.

6

Secondly, the Agreement is unconscionable due to its skillfully drawn nature, its exploitation of the underprivileged and uneducated, and its use of incomprehensible language. To begin, the Agreement is unilateral. A provision eliminating one party from an arbitration requirement but forcing the other party to arbitrate "any and all" issues arising from the employment is unconscionable on its face—particularly when the better-off party has such a strong economic position and bargaining strength over the contracting party. Moreover, the language used in the arbitration agreement is not clear on its face, especially to laypeople like Plaintiffs. At the forefront, Defendants essentially required Plaintiffs to sign away their rights to litigate employment disputes as they wished. When Plaintiffs signed the Agreement they neither knew nor were informed as to what "dispute resolution" or "arbitration" meant.[4] As established by the attached affidavits, Plaintiffs lacked sufficient education to understand what rights they exactly were signing away. In sum, the Agreement's "take it or leave it" amounts to nothing more than corporate exploitation of temporary employees.

The agreement in question is silent on who the fees for such alleged arbitration falls on. While the *Wilson* court did not find unconscionability in part because the "apportionment of fees [fell] heavily upon" the Defendant, here, no such apportionment of fees for arbitration exists. 2005 WL 1277948, at *9. As already explained, these Plaintiffs are not wealthy individuals—almost oppositely, they were in financial need to the extent they sought temporary employment. Thus, according to the Agreement on its face, Plaintiff will not only be forced to arbitrate, but will have a financial duty under such agreement, too.

Alternatively, the Agreement is also unconscionable to the extent that Defendants have come to court with unclean hands. "The clean hands doctrine is based upon the maxim of equity

---

[4] See Exhibit 19 ¶ 6-7; Exhibit 20 ¶ 6-7; Exhibit 21 ¶ 7.

7

that he who comes into equity must come with clean hands." *Fuqua v. Hanson,* 567 P.2d 862, 866 (Kan. 1977); *Green v. Higgins*, 217 Kan. 217, 220 (1975) ("The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct.")

In short, it would be both unequitable and unconscionable for Defendants to enforce an agreement of which they themselves originally breached. Defendants' unlawful discrimination against Plaintiffs renders any potential employment contract void. Defendants skillfully drew the arbitration agreement, a vast inequality in bargaining power exists both in Defendants' strong financial position and in Plaintiffs' need for work and lack of education, and the obligations requiring Plaintiffs to arbitrate but not the Defendants is heavily imbalanced; this results in unconscionability, thus voiding the Agreement.

### D. If the Agreement is Enforced, Plaintiffs' Claims Should Be Arbitrated As a Class or Collective Basis

Importantly, the Defendants' arbitration agreement does not contain an anti-class action provision or clause of any kind. In fact, the arbitration agreement in question is silent altogether on any issues relating to class or collective actions. Because the agreement is silent with regard to class and collective actions, it would be unjust and unreasonable to apply the agreement to Plaintiffs decision to bring and or join a class or collective action lawsuit. Ultimately, without an anti-class or collective action provision, the arbitration agreement is inapplicable to Plaintiffs claims.

Alternatively, if arbitration is compelled, Plaintiffs should be allowed to arbitrate as a class because individual arbitration would frustrate the purpose of Plaintiffs' legal theories. The crux of Defendants' stance is essentially this: Because the Agreement at issue does not require class arbitration, this Court should compel arbitration on an individual basis. Here,

8

Defendants complain that it would be unfair to allow Plaintiffs to pursue arbitration as a class. In so protesting, Defendants cite to *AT&T Mobility LLC v. Concepcion*, wherein the Supreme Court discussed the drawbacks of permitting class arbitration and noted "while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties." 563 U.S. 333, 348 (2011). As Defendants highlight in their argument, the Supreme Court announced its disapproval of class arbitration, finding "when damages allegedly owed to *tens of thousands of potential claimants* are aggregated and decided at once, the risk of an error will often become unacceptable." *Id* at 350 (emphases added).

   To begin, the Supreme Court's discussion in *Concepcion* can be distinguished from this case because *Concepcion* addressed class actions as they pertain to consumer law. Indeed, the Supreme Court's issue with arbitrating a case with a class of "tens of thousands of potential claimants" most properly reflects a consumer class action case as opposed to an employment discrimination case. It naturally follows that this case does not pose such a threat to Defendants. Moreover, under the Arbitration Agreement, the American Arbitration Association ("AAA") is deemed to possess the sole authority to conduct arbitration between the parties. The AAA has promulgated "Supplementary Rules for Class Arbitrations" ("Class Rules") to guide arbitrators through arbitration where a party submits a dispute on behalf of a class or purported class. By streamlining expected processes, the Class Rules undoubtedly lower the risks of class arbitration that purportedly victimize Defendants. Defendants poignantly admit that arbitration allows them to dodge the risks associated with litigation in courts. By denying Plaintiffs the ability to arbitrate as a class, the equitable scheme of civil rights laws is undeniably frustrated and the risk of

9

obtaining incorrect or inconsistent judgments is paramount. *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 876 (U.S. 1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.") (quotations and citations omitted).

### F. The Enforceability of the Arbitration Agreement Must Be Determined By This Court.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Kansas City Souther Transport Co., Inc. v. Teamsters Local Union* #41, 126 F.3d 1059, 1067 (8th Cir. 1997) (quoting *AT&T Technologies v. Communications Workers of AM.*, 475 U.S. 643 (1986)). Following that, the question of "arbitrability" is one to be determined judicially. *AT& T* at 649. The Court in *AT&T* held that because of a court's need to determine whether or not arbitration should be required, a court should not order "the parties to arbitrate the arbitrability." *Id.* Here, Plaintiffs attack the validity of the Agreement, not the employment contract as a whole. This question of arbitrability, and whether or not the Agreement has legal merit, may solely be decided by state contract law.

WHEREFORE, Plaintiffs respectfully request that this court deny Defendants' Motion to Dismiss and to Compel Arbitration.

Respectfully submitted,

**HOLLINGSHEAD, PAULUS, ECCHER & FRY**

By: /s/ Brittany C. Mehl
Ryan M. Paulus    MO Bar 59712

10

E-Mail: r.paulus@hpeflaw.com
Brittany C. Mehl    MO Bar 67334
E-Mail: b.mehl@hpeflaw.com
8350 North St. Clair Avenue, Suite 225
Kansas City, Missouri 64151
Telephone    (816) 581-4040
Facsimile    (816) 741-8889
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2016, a true and correct copy of the foregoing, along with a copy of this Certificate of Service, was served by electronic filing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Case Linden P.C.
Kevin D. Case
kevin.case@caselinden.com
Patric S. Linden
patric.linden@caselinden.com
David V. Cascio
david.cascio@caselinden.com
Cory R. Buck
cory.buck@caselinden.com
Case Linden P.C.
2600 Grand Boulevard, Suite 300
Kansas City, MO 64108
Telephone    (816) 979-1500
Facsimile    (816- 979-1501
ATTORNEYS FOR DEFENDANTS

/s/ Brittany C. Mehl
**ATTORNEY FOR PLAINTIFFS**

11